**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MARTHA JO DORGAN**                           **CIVIL ACTION**

**VERSUS**                                     **NO:       04-0221**

**MAYSON FOSTER, ET AL**                       **MAGISTRATE JUDGE**
                                               **KAREN WELLS ROBY**

<u>**ORDER AND REASONS**</u>

Before the Court is **Defendants Motion for Reconsideration of this Court's Order and Reasons Entered on July 24, 2006, Partially Denying Motions for Summary Judgment (doc. # 58)** filed by the City of Hammond and Mayor Mayson Foster.

The plaintiff, Martha Jo Dorgan, filed an opposition motion. The parties consented to have the case tried before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The motion was heard on August 16, 2006.

**I.      <u>Background</u>**

The Court notes that the facts of this case were thoroughly reviewed in its Order and Reasons entered into on July 21, 2006 and thus will not attempt another exhaustive review of the facts of this case before proceeding to the subject motion. (*See* Rec. Doc. No. 55). Suffice it to say, the plaintiff, Martha Dorgan, filed this action pursuant to Title VII, the Age Discrimination in Employment Act ("ADEA"), and Louisiana's Employment Discrimination Law ("LEDL") against Mayson Foster and

the City of Hammond alleging that they discriminated against her on the basis of her age and sex.  She also contends that when they originally terminated her they indicated they were eliminating the position of Airport Director for the City of Hammond.   She alleges that they violated her due process rights under 42 U.S.C. § 1983 because they failed to provide her a pre or post termination hearing. She also alleged an intentional infliction of emotional distress claim.

The defendants filed motions for summary judgment seeking dismissal of all claims.  On July 21, 2006, this Court entered an order dismissing Dorgan's intentional infliction of emotional distress claims, age discrimination claim under state law, § 1983 claim against the City of Hammond, and Title VII, ADEA, and state law sex discrimination claims against Foster in his individual capacity.  The Court did not dismiss Dorgan's Title VII, ADEA, and state law sex discrimination claims against the City of Hammond and Mayson Foster in his official capacity.  The Court also did not dismiss Dorgan's § 1983 claim against Foster in his individual capacity.

On August 1, 2006, the defendants then filed the subject motion for reconsideration on four issues.  They contend that Foster is entitled to summary judgment on Dorgan's § 1983 claim, her Title VII and ADEA claim, and her state law discrimination claim.  They also contend that the City of Hammond is entitled to summary judgment on Dorgan's ADEA claim.

Dorgan filed an opposition motion contending that Foster is not entitled to summary judgment on her § 1983 claim and the defendants are not entitled to summary judgment on her ADEA claim.

II.   **Standard of Review**

    A.   **Reconsideration**

A motion for reconsideration is treated as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) or a motion for relief from judgment under Rule 60(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990).  In this case, the

motion was filed within ten days of this Court's decision and is therefore considered a motion to alter or amend judgment under Rule 59(e).  *See id.*

A Court can entertain a motion for reconsideration if the moving party satisfies at least one of the following four criteria: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law.  *Gregg v. Weeks Marine, Inc.*, CIV.A.99-1586, 2000 WL 802865, at * 2 (E.D.La. May 26, 2000).  When reconsidering a denial of a motion for summary judgment, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."  *Lavespere*, 910 F.2d  at 185.

### B.  <u>Summary Judgment</u>

Summary judgment is proper if the evidence shows the existence of no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of informing the Court of the basis for its motion and "identifying those portions . . . of the record which it believes demonstrate the absence of a genuine issue of material fact."  *See Celotex Corp v. Catrett,* 477 U.S. 317, 323 (1986).  A party is entitled to summary judgment only if the pleadings, depositions, answers to interrogatories, admissions and affidavits before the court at the time of summary judgment show that there is no genuine issue of material fact.  *See Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the non-movant "to show that summary judgment should not lie."  *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994).  While the Court must consider the evidence with all reasonable

inferences in the light most favorable to the non-movant, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the non-moving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions, on file,' designate 'specific facts showing that there is a genuine issue of fact for trial.'" *Celotex Corp.*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995). Further, there is no requirement in Rule 56 that a court "sift through the record in search of evidence" to support the nonmovant's position. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.).

## III. <u>Analysis</u>

### A. <u>Dorgan's § 1983 Claims</u>

In his motion for reconsideration, Foster contends that he is qualifiedly immune from liability under § 1983 because he sought and obtained legal advice from the City Attorney, Andre Coudrain prior to eliminating Dorgan's position as Airport Director. Foster contends that because he consulted an attorney, his action eliminating Dorgan's position was objectively reasonable. Foster cites to several cases he contends support the proposition that if he relies on the advice of an attorney when taking his action, he is immune from liability under § 1983.

Dorgan contends that the cases cited by Foster indicate that reliance on an attorney's advice is only a factor in determining whether a party's actions are objectively reasonable. Accordingly, Dorgan contends that these cases are easily distinguishable from this case.

The Court notes that Dorgan's complaint contends that Foster violated her due process rights

when he terminated her without cause and without offering her a pre or post termination hearing.  Her complaint does not allege that Foster violated her due process rights when he eliminated the position of Airport Director.  Indeed, she contends that Foster's contention of restructuring was pretextual, and that he never intended to eliminate the Airport Director position.  The Court notes the position of Airport Director still exists today.

In this case, Foster seeks to conflate the elimination of the position of Airport Director and Dorgan's termination.  Foster does not contend that he relied on the advice of an attorney to conclude that Dorgan was an at-will employee and thus could be terminated at any time.

For example, Foster's deposition states that:

> we discussed with counsel the elimination of the position [of Airport Director]. Counsel - - Legal Counsel did not find that it was necessary [to follow certain procedures for reorganization].  He didn't - - We did not believe we were doing a reorganization.

(Def. Ex. 15 at 79-80).  He further testified that:

> [he] reviewed the Hammond Charter with City Attorney Andre G. Coudrain and determined that as Mayor, he had the authority to vacate the position.

(Def. Ex. 17)

Nowhere in the record is there any evidence that Foster consulted with an attorney about whether Dorgan was an at-will employee and whether  he could terminate her without providing due process.  Clearly, elimination of a position is different from termination of an employee.  Accordingly, whether Foster relied on the advice of attorney when he attempted to eliminate the position of Airport Director is not relevant to his behavior when he terminated an employee  whose status is in dispute.  Thus, he provided no new evidence such that this Court will reconsider its earlier Order.  Accordingly, the Court denies the motion for reconsideration on this issue.

**B.**      **Title VII and ADEA Claims Against Foster**

Foster seeks reconsideration of the Court's conclusion that Dorgan can sue both the City of Hammond and Foster in light of this Court's holding in *Chustz v. City of New Orleans*. *See* CIV.A.01-3118, 2002 WL 31556353 (E.D.La. Nov. 15, 2002).  Foster contends that under *Chustz*, this Court should dismiss Dorgan's Title VII and ADEA claims against him because Dorgan is also suing the City of Hammond under Title VII and the ADEA.  He contends that Dorgan cannot sue both the City of Hammond and Mayson Foster because the City could effectively be held liable twice for any recovery.

Dorgan offers no opposition in response.  The defendants apparently suggest to the Court,  by their underlining and bolding of the fact in their brief, that because Dorgan did not oppose the granting of summary judgment on certain issues the Court should have granted their motion regardless of its merits.  However, this is not the case.

As the Fifth Circuit has explained, "a motion for summary judgment cannot be granted simply because there is no opposition . . . . [t]he movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed.  *Hetzel v. Bethlehem Steel Corp*., 50 F.3d 360, 362 n3 (5th Cir. 1995) (*citing Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir.1985).

Mayor Foster is being sued in his official capacity under Title VII and the ADEA as Mayor of the City of Hammond.  The Court notes that while it is well-settled law in the Fifth Circuit that a party may not maintain a suit against both an employer and its agent under Title VII, *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir. 1999), there has been no allegation by Foster that he is not Dorgan's employer under Title VII.  Indeed, throughout his earlier motion for summary judgment,

Foster contended that as chief executive officer he directs and supervises the administration of all City Departments, offices, and agencies.  (*See* Rec. Doc. No. 9 at 9).  He further contended that he had "complete authority regarding all personnel matters" and that **<u>final authority for Personnel Management rests with the Mayor</u>**."  *Id.  (underscoring and bolding in original).*

The Court further notes that the definition of employer under Title VII is given a liberal reading to effectuate Title VII's purpose of eliminating discrimination.  *Quijano v. University Federal Credit Union*, 617 F.2d 129 (5th Cir. 1980).  Foster "would be considered an employer under Title VII if he wields the employer's traditional rights, such as hiring or firing."  *Huckabay v. Moore*, 142 F.3d 233 (5th Cir. 1998).  In this case, Foster contended that all authority for personnel management rests with him such that he is appropriately considered Dorgan employer.

The Court also finds *Chutsz* distinguishable.  The *Chutsz* Court noted that the plaintiff had alleged that the Mayor was a proper party to the suit because he appointed eight of the fifteen Board members that made the decision not to hire her as Executive Director.  *Chutsz*, 2002 WL 31556353 at *12.  The *Chutsz* Court disagreed, and dismissed the Mayor from the suit by concluding that he was not the plaintiff's employer.  *Id.* The *Chustz* Court then concluded that, "[h]ere it is clear that the Board. . . was responsible for hiring, promoting, and establishing its employees' wages.  Thus, [the Board] was Chustz's employer for purposes of Title VII.  *Id.* at *13.

Although not clearly articulated, Foster now advances an additional argument.  He contends that if Dorgan were permitted to pursue her Title VII claim against the City and him, that because he is being sued only in his capacity as the Mayor of the City of Hammond, the City would pay any judgment awarded against him.

Additionally there is a risk that he and the City could be held liable when the money would come from the same coffers and the City could only be held liable if the jury determined that he

violated the law.  Therefore, a suit against him is nothing more than a suit against the City.

The Court agrees.  *See  Albright v. The City of New Orleans,* CIV.A.96-0679, 2001 WL 725354 *8-*9 (E.D.La. June 26, 2001)(referencing overlapping causes of action).  To prevent an overlapping cause of action, the official capacity claim against the Mayor of the City of Hammond under Title VII and the ADEA should be dismissed.

### C.      ADEA Claim against the City

The defendants contend that Dorgan's ADEA claim is untimely because it was filed 300 days after she filed her original EEOC charge alleging sex discrimination on April 28, 2003.  They allege that Dorgan notified the EEOC on May 18, 2004 that she inadvertently failed to allege age discrimination in her original charge.  They argue that Dorgan believed that she was the victim of age discrimination when she originally filed her complaint in April, but failed to amend her charge to include it within 300 days of April 24, 2003.[1]

For support, they cite to a letter written by Dorgan's counsel to the EEOC.  They further contend that she was required to submit a charge of discrimination with the EEOC within 300 days of the alleged unlawful practice which they contend Dorgan alleged occurred on April 24, 2003.

Dorgan contends, however, that the letter cited by the defendants states only that she inadvertently failed to amend her charge to include age discrimination after she learned of the hiring of an individual under 40 in September 2003.  Thus, Dorgan contends that the 300 day time limit began running in September, not April, and thus her charge was timely amended.

The letter in question states:

[h]aving reviewed the Right to Sue letter issued in the above matter, it has recently

---

[1]In a "deferral" state like Louisiana, an aggrieved person has 300 days from the date of the last act of discrimination to file a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1); *see Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001)

come to our attention that the basis of age discrimination was neither alleged by us, nor referenced in the Right to Sue letter.  This omission was inadvertent. . . . Ms. Dorgan was and is over the age of 40 years.  Her ultimate replacement, Byron Hudgins, is a male under the age of 40 years.  He was not hired until September, 2003.  To the extent necessary, please consider this letter as a supplement to the above EEOC Charge, alleging age as an additional basis of discrimination.

The letter does not state, as the defendants suggest, that Dorgan knew she was a victim of age discrimination when she filed her original charge on April 28, 2003.

Indeed, according to the letter, she is attempting to supplement her original sex discrimination charge with an additional age discrimination charge because a younger male under the age of 40 was hired to replace her in September 2003, some five months after her original charge.  Thus, her age discrimination claim was not ripe until the younger male was hired in September.

As this Court noted in its earlier order, Dorgan then submitted a supplemental charge of age discrimination on June 1, 2004 which is 260 days after the alleged act giving rise to the amendment and thus is timely.  Because the defendants argument is not based on evidence in the record, the motion for reconsideration as to this issue is denied.

D.	**The LEDL Age Discrimination Claim against Foster**

Finally, the Court turns to Foster's argument that he cannot be sued under the LEDL because he is not an employer for purposes of the law.  Foster contends that the statutory definition of employer under the LEDL is distinct from the definition under Title VII.  Further, Foster contends that state and federal courts in Louisiana distinguish between the employer definition in right to control cases and the statutory definition of employer for employment discrimination law.

Dorgan provides no argument in opposition to the motion.

Upon a rereading of the statute, the Court finds that it is appropriate to reconsider this issue.  Upon further review, the Court notes that "unlike the broad definition set forth in Title VII, an

'employer' within the meaning of Louisiana's anti discrimination statute includes 'a person, association, legal or commercial entity . . .receiving services from an employee, *and, in return, giving compensation* of any kind to an employee.'"  *Seal v. Gateway Companies*, CIV.A.01-1322, 2002 WL 10456 at *3 (E.D.La. Jan. 3, 2002) (emphasis in original).  Thus, to qualify as an employer under the statute, a purported employer must  "(1) receive services from an employee and [in] return give compensation to that employee; and (2) meet the requisite number of employees prescribed by the statute."  *Id.* at *4.

Louisiana state courts have also noted the definition of employer "under Title VII does not have the same limited interpretation" as Louisiana's definition and that under the Louisiana definition the court considers "whether the defendant paid the plaintiff's wages and withheld federal, state, unemployment or social security taxes from his check."  *Duplessis v. Warren Petroleum, Inc.*, 672 So.2d 1019, 1023 (La. App. 4 Cir. 1996); *see also Onyeanusi v. Times Picayune Publishing Corp.*, 485 So.2d 622 (La.App. 4th Cir.1986).  Further, the *Seal* Court noted that while the traditional test in "Louisiana to determine if an employer-employee relationship exists relates to "right of control," the legislature gave "employer" a specific definition which controls in an action for intentional discrimination in employment."   2002 WL 10456 at *4.

In this case, Foster provides Dorgan's W-2 forms for the years 2002 and 2003. (*See* Def. Mem. Ex. 4).  The forms list the City of Hammond as her employer.  There is no evidence to the contrary in the record.  Accordingly, upon reconsideration, the Court grants Foster's request for summary judgment and dismisses the LEDL claim.

**IT IS THEREFORE ORDERED THAT** the **Defendants Motion for Reconsideration of this Court's Order  and Reasons Entered on July 24, 2006, Partially Denying Motions for Summary Judgment (doc. # 58)** is **GRANTED IN PART AN DENIED IN PART**.

1. The motion is **GRANTED** to the extent that Foster seeks dismissal of Dorgan's **LEDL age discrimination claim** against him.

2. The motion is **GRANTED** to the extent that the defendants seeks to dismiss Dorgan's claims against **Foster** in his official capacity under the ADEA and Title VII because the cause of action against him overlaps with Dorgan's cause of action against the City.

3. The motion is **DENIED** to the extent that the Foster seeks dismissal of the **§1983 claim** because he consulted a lawyer.

4. The motion is **DENIED** to the extent that the City seeks dismissal of the **ADEA** claim.

New Orleans, Louisiana, this _____22nd_____ day of August 2006

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**